1
2
3
4
5
6
7
8
9
10
11
12

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JOSE E. FLORES,                          )
                                         )
                    Plaintiff,           )       Case No. 2:14-cv-00806-JCM-GWF
                                         )
vs.                                      )       **FINDINGS AND**
                                         )       **RECOMMENDATION**
CAROLYN W. COLVIN,                       )
Commissioner of Social Security,         )       Motion to Reverse or Remand (#22)
                                         )       Cross-Motion to Affirm (#23)
                    Defendant.           )
_____)

13        This case involves judicial review of administrative action by the Commissioner of Social

14 Security denying Plaintiff Jose Flores' claim for disability benefits under Title II of the Social

15 Security Act.  Plaintiff's Complaint (#5) was filed May 30, 2014.  Defendant's Answer (#16) was

16 filed July 29, 2014, as was a certified copy of the Administrative Record (the "AR").  *(See* #17)  This

17 matter has been submitted to the undersigned United States Magistrate Judge for Findings and

18 Recommendations on Flores' Motion to Reverse or Remand (#22), filed on September 26, 2014, the

19 Commissioner's Cross-Motion to Affirm and Opposition to Plaintiff's Motion to Reverse or Remand

20 (#23), filed on October 24, 2014, and Plaintiff's Reply (#25), filed on November 13, 2014.

21                                      **BACKGROUND**

22        Plaintiff seeks judicial review of Administrative Law Judge ("ALJ") David K. Gatto's

23 decision denying his claim for Social Security disability benefits.  *See* Administrative Record ("AR")

24 28-37.  The issues before the Court are whether the ALJ erred at step four of his analysis by failing to

25 articulate legitimate reasons for rejecting the opinions of Plaintiff's treating physicians relating to his

26 alleged disability and for failing to provide clear and convincing reasons for finding that Plaintiff's

27 statements and testimony regarding the severity of his symptoms were not credible.

28 . . .

**A.    Procedural History.**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on August 16, 2011, alleging that he became disabled on October 4, 2008.  The application was denied initially and upon administrative reconsideration.  AR 28.  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  At a hearing on February 12, 2013, Plaintiff appeared with his attorney, Gerald Welt, and testified in support of his claim.  AR 42-51.  Gerald Davis, a vocational expert, also appeared at the hearing.  In a decision dated March 21, 2013, ALJ Gatto found that Plaintiff was not disabled within the meaning of the SSA.  Plaintiff timely filed a request for review which was denied by the Appeals Council on March 24, 2014.  AR 1.  Plaintiff then filed this action for judicial review pursuant to 42 U.S.C. 405(g).  This matter has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§ 636 (b)(1)(B) and (C).

**B.    Factual Background.**

**1.    Plaintiff's Disability/Work History Reports and Medical Records.**

Plaintiff Jose Flores was born on May 1, 1957.  AR 143.  He was 51 years old on the alleged onset date of disability.  He is 5'7" tall and weighed 250 pounds.  AR 177.  Plaintiff resides with his wife and with relative Eva Flores Martinez.  AR 144.  Plaintiff completed school through sixth grade in 1969.  AR 177.  Plaintiff has experience working as a delivery man, a kitchen helper, a kitchen worker, a convention porter, and an agent for a car rental service.  AR 196-198.

Plaintiff was seen by Dr. Nilofar Kuraishi on December 1, 2007, complaining of foot pain.  AR 290.  On July 7, 2008, Plaintiff was seen by Dr. Earl Jacobson, who determined that Plaintiff had worsening symptoms of paresthesia-tingling and pain in his left ankle and foot.  AR 346.  He also found that Plaintiff had Tinel's Sign, a tingling sensation in the foot.  *Id*.  He diagnosed Plaintiff as potentially suffering from Tarsal tunnel syndrome.  He also found that the Plaintiff could be suffering from heel spur syndrome with bursitis.  AR 337.  Dr. Jacobson noted that conservative treatment had failed and that surgical correction might be necessary.  Plaintiff was referred to Dr. Russell C. Packard, a medical neurologist, for an evaluation.  AR 339-340.  Plaintiff showed "normal bilateral peroneal distal latencies," though his "left tibial distal latency was delayed."  AR 339.  His nerve

conduction was normal in both lower extremities. Plaintiff's left plantar response was "absent." AR 340. Overall, the doctor found that there was evidence of "a left tarsal tunnel syndrome," and recommended clinical correlation. Dr. Jacobson subsequently scheduled Plaintiff for surgery on July 22, 2008, and excused him from work until September 3, 2008. AR 343-344. Dr. Jacobson performed a second surgery on August 5, 2008 for the removal of a neuroma and the release of the posterior tibial tendon. AR 341.

Plaintiff followed up with Dr. Jacobson on August 12, 2008. AR 333. Dr. Jacobson noted that the surgical area looked good, and he instructed Plaintiff to stop taking Darvocet. Plaintiff returned on August 19th and complained of mild pain and swelling. Dr. Jacobson found this to be normal postoperative healing. Plaintiff returned on August 27th for staple removal and complained of minor pain and swelling. It was noted that there was slight gapping at the incision where the foot meets the ankle. He was instructed to stay in his walking boot. AR 333. On October 1, 2008, Plaintiff returned after completing a week of physical therapy. He complained of mild pain at the top and side of his foot. Dr. Jacobson found that he was healing normally, but had a strained plantar fascia postoperatively, and fitted Plaintiff for orthotics. AR 333. On October 9, 2008, Plaintiff complained of pain in his foot and ankle and on the bottom of his heel. AR 334. He was found to have edema and plantar fasciitis in the heel, as well as foot and ankle capsulitis. He was prescribed anti-inflammatories and given an extension of time to be off work.

Plaintiff was referred to physical therapist ("P.T.") Stanley Y. Kamimoto on October 9, 2008. AR 227-229. Plaintiff reported to P.T. Kamimoto that he had received injections in El Salvador for the pain in his foot and continued to use the injections upon returning home to the United States. Once he returned, however, his doctor refused to administer any more injections. After Plaintiff administered the final doses himself, it was determined that surgery was required. AR 227-228. P.T. Kamimoto found that Plaintiff suffered from the residual effects of his surgeries, which included "increased left foot pain, decreased range of motion and strength, and decreased tolerance with functional activities." It was recommended that Plaintiff be placed on a comprehensive rehabilitation plan with two to three visits per week for three to four weeks.

. . .

1    Plaintiff returned to Dr. Jacobson on October 23, 2008 in regular shoes and only complained

2    of weakness in the heel and pain in the ankle.  He was found to be healing normally despite peroneal

3    tendinitis.  He was given an ankle brace to immobilize the peroneal tendon and prevent re-injury.

4    Plaintiff returned to Dr. Jacobson on May 27, 2009 for pain on the bottom of the heel and in the

5    lateral foot and ankle area.  AR 334.  Dr. Jacobson found Plaintiff to be suffering from plantar

6    fasciitis and peroneal tendinitis.  He recommended that Plaintiff wear a Low Dye Unna boot.

7    On February 8, 2010, Plaintiff was seen at the Sunrise Hospital Emergency Room for severe

8    back pain.  AR 230.  He rated his pain as a 10/10, and informed the nurses that the pain had just

9    started that day.  Later, he stated that the pain had become gradually worse for a month before the

10   emergency room visit.  AR 233.  Plaintiff was treated with Hydromorphone, which brought his pain

11   level down to 3/10.  AR 231.  He was released on February 9, 2010.  AR 231.  Plaintiff was

12   prescribed Lortab, Motrin, and Robaxin, and was instructed to see a physician to follow up.  AR 237.

13   Plaintiff was again seen at the Sunrise Hospital Emergency Room on October 7, 2010.  AR

14   245.  He reported two to three days of neck pain, for which he had taken some of his wife's

15   medications and had become dizzy.  Dr. Ellis noted that Plaintiff suffered from dizziness, neck pain,

16   hypertension, and dyslipidemia.  AR 255.  No evidence was found of an acute fracture or subluxation

17   in Plaintiff's neck, though there were mild degenerative changes at the C1-C2 junction.  AR 259.  An

18   evaluation of his lungs revealed minimal right basilar subsegmental atelectasis, but otherwise his

19   lungs were clear.  AR 261.  In reviewing a CT scan of Plaintiff's pelvis, Dr. Wayne Jacobs noted a

20   possible cyst in the left lateral liver lobe, but the evaluation was incomplete.  AR 262.  Plaintiff had

21   high levels of Troponin I which increased his risk for coronary events.  AR 268.  His cholesterol and

22   triglyceride levels were elevated.  AR 269.  He was prescribed Norvasc, Protonix, Meclizine, and

23   Lortab, and was instructed to establish a primary care provider in the next one to two days.  AR 245.

24   Plaintiff reported having no pain upon discharge.  AR 247.

25   On November 29, 2010, Plaintiff was seen by Dr. Jeremy Wood of the Eastern Podiatry

26   Group.  AR 272-274.  Plaintiff stated that he was in moderate pain and could not return to work

27   because he was afraid the pain would return.  AR 272.  The doctor noted that Plaintiff had moderate

28   pain in the left foot on palpation.  Plaintiff complained of pain with his first step in the morning and

throughout the day.  He received little relief from orthotics, shoe changes or injections.  Dr. Wood

found that Plaintiff was suffering from onychomycosis, a fungus that builds up below the nails.[1]  AR

273.  Plaintiff was prescribed lamisill.  Plaintiff was instructed to treat his pain with icing and

stretching.  AR 272.

Plaintiff returned to Dr. Jacobson on June 21, 2011 complaining of pain on the bottom of his

left heel.  AR 334.  Plaintiff was noted to have pain on palpation.  Dr. Jacobson stated that Plaintiff

had plantar fasciitis, calcaneal spur, and bursitis.  Plaintiff was fitted for new orthotics and x-rays

were taken.  Plaintiff was seen by Dr. Lisa Gamino on August 2, 2011, and found to have mild

osteoarthritis in his right knee.  AR 291.  His cholesterol and triclyceride levels were still high.  AR

295.  On August 5, 2011, Plaintiff reported to Dr. Jacobson that he had continuing pain in the left

heel and arch.  AR 331.  Dr. Jacobson stated that Plaintiff had been wearing the orthotics in the

wrong shoes and instructed him to stop doing so.  He was also taking too little of his Voltaren

medication.  Dr. Jacobson stated that the Plaintiff might require sandal orthotics in the future.  By

August 12, 2011, Plaintiff's weight had risen to 280 pounds.  AR 276.  As of August 19, 2011,

Plaintiff was still wearing his orthotics in the wrong shoes, and had a new orthotic made to fit in his

shoes.  AR 331.  He received the new orthotic on September 2, 2011, and showed improvement when

he returned to Dr. Jacobson on September 23, 2011.  Because Plaintiff was still having pain and there

was evidence of plantar fasciitis, he was fitted for orthotics in sandals to be worn around the house.

On October 21, 2011, Plaintiff reported that the orthotics hurt his feet and that the Voltaren upsets his

stomach.  Plaintiff was prescribed physical therapy and Volatren patches.  AR 331.

Plaintiff was evaluated by Dr. Jerrold M. Sherman on behalf of the Bureau of Disability

Adjudication on October 25, 2011.  AR 299-302.  Plaintiff told Dr. Sherman that he had aching pain

in his left heel that occurred primarily in the afternoon.  AR 299.  The pain also occurred when

walking or standing for longer than 30 minutes.  The sole of his foot was often numb.  He also

complained of pain in his right heel that could be brought on by long walking.  Both ankles had

---

[1]http://www.mayoclinic.org/diseases-conditions/nail-fungus/basics/symptoms/con-20019319.
Retrieved August 24, 2015.

normal sensation and motion. *Id.* Plaintiff was able to walk without any assistive device, though he did wear shoe inserts. He had no trouble squatting. AR 300. Dr. Sherman noted that Plaintiff was able to get onto the examining table easily and sit up from a lying position without difficulty. Plaintiff reported tenderness with palpation over the plantar aspect of the calcaneus of his left foot, and claimed decreased sensation over the sole of his left foot. Dr. Sherman found that he had normal pain-free motion with inversion and eversion of the left heel and pronation and supination of the foot. AR 301. Examination of the right ankle and foot revealed normal appearance without swelling or tenderness. Plaintiff had normal inversion and eversion of the right heel, and normal pronation and supination of the right foot without pain complaint. His right heel was not tender. X-rays revealed moderate calcaneal spurs in both feet.

Dr. Sherman found that Plaintiff had no mechanical deficits in either foot despite the calcaneal spurs. He stated that, overall, Plaintiff was able to sit, stand, and walk for six hours in an eight hour day without an assistive device. He could lift 50 pounds frequently and 100 pounds occasionally. Plaintiff had no restrictions on bending, squatting, kneeling, reaching, pushing, pulling, grasping, or performing fine manipulation activities with his hands. AR 301.

Plaintiff was evaluated by physical therapist Justin Himori on November 8, 2011. AR 325-328. Plaintiff reported that his left foot pain had slowly increased over time after his surgery. AR 325. He denied any history of injury or accident that could have led to his condition. He was taking medication for hypertension, and weighed 270 pounds. AR 326. Plaintiff complained of pain and increased swelling, numbness and tingling when walking more than 30 minutes. His foot pain decreased with recumbency. He denied any left foot pain while at rest or standing. Plaintiff's gait showed no significant deviations, and there was no significant pronation or supination (excessive or insufficient inward rolling) of the left foot. AR 326. Plaintiff has decreased joint mobility and his ankle was tender to touch. AR 327. P.T. Himori stated that Plaintiff would benefit from therapeutic exercise and manual therapy techniques to increase left ankle range of motion and strength, and decrease his pain. He also recommended treatment modalities consisting of ultrasound, E-Stim, soft tissue massage, moist heat packs, and cryo packs as needed to decrease pain. He recommended that Plaintiff be treated three times per week for three weeks while also undertaking a home exercise

1   program.  AR 327.  Plaintiff was seen for follow-up physical therapy on November 14, 2011 and
2   reported no change in his condition since his initial examination.  AR 316.  On November 16, 2011,
3   he again reported no change in his condition, and that he had not yet started using the ice on his foot.

4        Plaintiff was seen by Dr. Jacobson on November 18, 2011, who noted that he was showing
5   improvement in his left heel and arch pain with the Voltaren patches.  He still had pain on palpation.
6   He was given the sandal orthotics and represcribed Voltaren patches.  AR 331.

7        On November 21, 2011, Plaintiff reported to the physical therapist that there was no change in
8   his condition and that he had increased pain when walking after 30-45 minutes and when standing for
9   long periods.  The pain was worse at night.  AR 316.  On November 28, and 30, 2011, Plaintiff again
10  reported no changes in his condition or pain.  AR 316.  On December 2, 2011, he reported that he felt
11  better after the tissue work done on November 30, but overall felt no change in pain.  AR 315.  The
12  therapist noted that he was better at the end of the session and had decreased complaints while
13  walking.  *Id.*  On December 5, 2011, Plaintiff reported numbness/tingling when he laid down in the
14  evening, but otherwise no change in his status.  On December 7, 2011, Plaintiff complained of
15  continued pain in the arch of his foot while walking.  On December 12, 2011, Plaintiff stated that the
16  medicated patches were helping him, but that he was still limited to 30-45 minutes of walking or
17  standing.  There was no noticeable change in the Plaintiff's condition on December 14, 2011.  AR
18  314.

19       A State agency physical medical consultant conducted a Disability Determination on February
20  2, 2012.  AR 75-83.  The consultant found Plaintiff could lift up to 100 pounds occasionally and 50
21  pounds frequently.  AR 81.  He could stand or walk for six hours in an eight hour work day, though
22  he has to periodically sit to relieve pain.  He has no postural, visual, manipulative, or push/pull
23  limitations.  Overall, the consultant found that Plaintiff was not disabled and had some ability to
24  perform his past work as a cook's helper.  AR 82.

25       Plaintiff stated in a Social Security Disability Report submitted on March 23, 2012, that he
26  had such severe pain in his feet that he could not walk and that he had to stop very frequently even
27  when standing.  AR 213.

28  . . .

On March 29, 2012, Dr. Nilofar Kuraishi completed a "Physical Medical Source Statement" questionnaire regarding Plaintiff's physical condition. AR 369-372. He diagnosed Plaintiff as suffering from post surgery left foot pain and stated that his prognosis was poor. AR 369. He stated that Plaintiff experienced left foot pain and numbness, and had increased left foot pain after 30-45 minutes of walking. *Id*. Dr. Kuraishi stated that Plaintiff could only walk two to three blocks at one time, and could only stand for 45 minutes. AR 370. In an eight hour work day, Plaintiff could stand and walk for less than two hours. He stated that Plaintiff would require a job that permitted shifting at will from sitting, standing, or walking, and that would allow for periods of walking around. Plaintiff did not require the use of an assistive device. AR 371. Dr. Kuraishi stated that Plaintiff could frequently lift 50 pounds, and could occasionally twist, stoop, crouch, climb stairs, and climb ladders. He had no limitations with reaching, handling, or fingering. He estimated that the Plaintiff's conditions would "be severe enough to interfere with attention and concentration needed to perform even simple work tasks" more than 25% of the time during an eight hour day. AR 372. He stated that Plaintiff was capable of tolerating moderate stress at work. Dr. Kuraishi stated that Plaintiff's impairments were reasonably consistent with the limitations described in his evaluation, and Plaintiff would have good and bad days if he returned to work. AR 372.

Plaintiff saw Dr. Jeremy Wood on August 28, 2012 and complained of severe left heel pain that had been gradually getting worse for the past few weeks. AR 375. He stated that his pain began with his first step in the morning and first step after sitting. Dr. Wood diagnosed left plantar fibrmastosis and caleaneal spur. Plaintiff was instructed to maintain his stretching and icing routines, to never walk barefoot or in sandals. Dr. Wood discussed the surgical options with Plaintiff and instructed him to return in two weeks. AR 375. Dr. Wood saw Plaintiff again on October 2, 2012. Plaintiff believed he had exhausted all conservative treatment options, including physical therapy, injections, medications, and orthotics, and requested surgery to alleviate his symptoms. AR 376. Dr. Woods noted that Plaintiff was unable to walk or stand for prolonged periods of time due to the pain of his torn ligament and indicated that this condition would last longer than 12 months and could be permanent. AR 376. Dr. Wood discussed the positives and negatives of surgery and gave Plaintiff instructions to prepare for the operation. It was noted that the Plaintiff's pain prevented him from

1    walking or standing for prolonged periods of time and may be permanent.

2         Dr. Wood performed surgery on Plaintiff's left foot on or about October 15, 2012.  (His

3    operative report is not contained in the record.)  Dr. Wood saw Plaintiff for his first post-operation

4    check-up on October 22, 2012.  AR 378.  Plaintiff had moderate pain on palpation which was normal

5    for the post-operative time period.  An x-ray revealed that the heel spur was totally removed.  Dr.

6    Wood instructed Plaintiff to continue icing and elevating his foot, to wear the post-operation boot,

7    and return in one week.  Dr. Wood next saw Plaintiff on October 29, 2012.  AR 379.  Plaintiff's pain

8    was under control without pain medication and was rated at a 4/10.  Plaintiff's surgical dressing had

9    become wet, and as a result the skin was macerated and weak, and the sutures had to be left in for an

10   additional week.  Dr. Wood next saw Plaintiff on November 5, 2012.  AR 380.  Plaintiff reported

11   zero pain.  Dr. Wood stated that the surgery had corrected Plaintiff's deformity and he had no pain

12   with palpation.  The sutures were removed, and he was advised to follow up in two weeks.  Plaintiff

13   returned on November 19, 2012.  AR 381.  His pain was now at a level of 3/10 and was well

14   controlled without pain medication.  Dr. Wood stated that Plaintiff's recovery appeared normal for

15   post-operation time.  He was again instructed to return in two weeks.  On December 3, 2012, the

16   Plaintiff complained of tightness in the gastroc region when walking.  AR 382.  His pain was at the

17   level of the 0-3/10.  He was advised to increase his walking as tolerated and to begin wearing normal

18   shoes.

19         Plaintiff was seen in follow-up on December 27, 2012.  He reported left heel spur resection

20   pain of 0-4/10, the pain in the left gastroc area was 0-7/10, and the pain in his left second

21   metatarsophalangeal joint was 5/10.  Dr. Wood again noted that pain was well controlled without the

22   pain medication.  AR 383.  Plaintiff's left gastroc registered pain upon palpation, but the lack of a

23   palpable dell indicated that the tendon was intact and healing.  Plaintiff also had minor pain his left

24   achilles and in his left 2nd metatarsophalangeal joint on palpation.  Dr. Wood stated that Plaintiff was

25   improving, but that the healing was taking longer than normal due to his poor healing potential and

26   weight.  Dr. Wood believed that the newly formed scar tissue was breaking down during walking, and

27   he instructed Plaintiff to perform an achilles towel stretch to compensate.

28   . . .

On January 11, 2013, Plaintiff reported pain upon palpation in his left heel spur region and a pain level of 4/10. AR 384. He was advised to continue exercising. He could resume wearing normal shoes and go about his normal activities as tolerated. Dr. Wood saw him again on February 8, 2013 at which time Plaintiff reported a pain level of 4/10. AR 386. Dr. Wood noted a "Huge improvement." The additional pain in his gastroc and achilles was "consistent with breaking down scar tissue" and that Plaintiff "need[ed] more time for the scar tissue of the achilles to remodel." Plaintiff was instructed to continue to follow his post-operation instructions.

### 2. Plaintiff's Hearing Testimony.

Plaintiff testified at the February 12, 2013 hearing before the ALJ that he does not have a high school diploma. AR 45. He stated that the job he held for the longest period during the preceding 15 years was as a convention porter in the Las Vegas area. He was forced to quit this job due to his condition. In regard to his normal activities of daily living, Plaintiff testified that he drives his wife to and from work, and takes care of and cleans the house. AR 46. He stated that he can do light housework such as washing dishes and sweeping. At the time of the hearing, Plaintiff was taking medication for cholesterol and high blood pressure. Plaintiff testified that even after his three foot surgeries, he cannot take a full step due to the pain in his left foot. He can only stand on his foot for 15 to 20 minutes before he has to lift his foot in the air due to pain and numbness. AR 48. He indicated that before his last operation, he could walk for 45 minutes, but he now suffers from "some type of pain in my nerve" after taking approximately three steps. He stated that he has been referred to physical therapy twice, but it did not help. AR 47-48.

### 3. Vocational Expert's Testimony.

Vocational Expert Gerald Davis testified regarding the Plaintiff's prior work history and ability to perform past employment. AR 50-51. Mr. Davis first discussed the Plaintiff's experience as a cleaner, which he described as heavy unskilled employment. AR 50. He also noted the Plaintiff's experience as a kitchen helper, which he described as medium unskilled employment. Mr. Davis was asked if a hypothetical person approaching advanced age, with the impairments of left tarsal syndrome, bilateral plantar fasciitis, calcaneal spurs with surgical heel spur surgery, and obesity, who is also limited to light work, could perform any of Plaintiff's past work. Mr. Davis said

1    the hypothetical person could not perform such work.  Mr. Davis also testified that if limited to

2    sedentary work, the hypothetical individual would have no transferable skills to light work.  AR 51.

3    Mr. Davis testified that his conclusions were consistent with the Dictionary of Occupational Titles.

4    AR 50-51.

5         **C.    ALJ's Decision.**

6         In his decision dated March 21, 2013, ALJ Gatto found that Plaintiff was not disabled within

7    the meaning of the Social Security Act from October 4, 2008 through the date of his decision.  In

8    reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-

9    (f).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the

10   alleged onset date of October 4, 2008.  AR 30.  At step two, he found that the Plaintiff has severe

11   impairments including "obesity, history of left foot pain status post calcaneal heel spur surgery,

12   history of right foot pain due to calcaneal spurs, mild osteoarthritis of the right knee, and plantar

13   fasciitis of the left foot."  He further found that Plaintiff's hyperlipidemia and hypertension were non-

14   severe impairments, because those conditions would not negatively impact the Plaintiff's ability to

15   work for a twelve month period.  AR 30-31.  At step three, the ALJ found that Plaintiff's impairments

16   did not, individually or in combination, meet the requirements of and were not medically equivalent

17   to any condition listed in Appendix 1, Subpart P, of 20 C.F.R. § 404.1520(c) and § 416.920(c).  AR

18   31.

19        Prior to step four of the sequential analysis, the ALJ found that Plaintiff had the Residual

20   Functional Capacity ("RFC") to perform the full range of "medium work" as defined in 20 CFR §

21   404.1567(c) and § 416.967(c).  AR 31.  The ALJ noted that Plaintiff claimed severe impairments of

22   high cholesterol, hypertension, left foot problems, and upset stomach due to the side effects of his

23   medication.  AR 32.  He also noted that the Claimant's obesity was a severe impairment that

24   impacted his ability to ambulate.  AR 34.  The ALJ found that the Plaintiff's testimony regarding the

25   significant pain in his feet was inconsistent, as he initially reported that he could stand or walk for 45

26   minutes, but later alleged that he could not stand for more than 20 minutes or walk more than 3 steps.

27   The ALJ also found that Plaintiff "has engaged in a somewhat normal level of daily activity and

28   interaction."  Plaintiff's ability to do some house cleaning, wash dishes and sweep, undermined his

11

1   claims of disability.  Overall, the ALJ concluded that Plaintiff's testimony regarding the severity of

2   his impairments was not credible because "the clinical findings and diagnostic imaging of record do

3   not support the claimant's allegations of disability."  He also noted that the Plaintiff was "inconsistent

4   in his adherence to his treatment regimen," which, while not the primary reason for the ALJ's

5   decision, "is a basis for finding the claimant is not disabled."  AR 32.

6        The ALJ summarized the Plaintiff's medical reports and records.  He began by noting that the

7   Plaintiff had sought treatment for his symptoms before the alleged onset of disability on October 4,

8   2008.  AR 33.  The ALJ noted that Plaintiff was evaluated and treated for "bilateral calcaneal, heel

9   spurs, plantar fasciitis of the left foot, and mild osteoarthritis of the right knee."  At that time, he had

10  also complained of "bilateral foot pain, numbness and tingling when lying down, pain with walking,

11  and problems with walking."  Plaintiff's mild osteoarthritis was confirmed by x-ray.  During the

12  period of alleged disability, Plaintiff "was noted to have edema of the feet, bilateral feet pain,

13  tenderness with palpation in the feet and plantar areas, decrease[d] range of motion greater in the left

14  than the right, 4 to 4+/5 strength in the left ankle, moderate left gastrocsoleus atrophy, reduced

15  resisted testing on the left, left hallux medial border ingrown, fungal nails, red rash on the bilateral

16  plantar arches, and pulses in the dorsalis and tibialis pulses were 3/4," though the treatment records

17  showed that Plaintiff had no difficulty walking.  AR 33.

18       The ALJ noted that Plaintiff has twice undergone surgeries before the alleged onset date of his

19  disability, i.e., foot surgeries in July and August 2008.  After the alleged onset date of October 4,

20  2008, his treatment consisted of "prescribed medications, steroid injections, physical therapy, home

21  exercise and stretching, use of orthotics, icing therapy, and follow-up care."  AR 33.  Plaintiff

22  requested a surgical correction in October 2012 because he felt that conservative methods were not

23  effective in relieving his condition.  AR 33.  The ALJ stated, however, that the record reflected that

24  Plaintiff had not been compliant with his medication regimen and that he had worn the orthotics

25  incorrectly.  The ALJ stated that when Plaintiff was compliant with his treatment regimen, his

26  condition improved.  AR 33-34.

27       In determining Plaintiff's RFC, the ALJ gave little weight to the opinions of Plaintiff's

28  treating doctors.  He also gave little weight to the opinions of the examining physician, Dr. Sherman,

1   or the State agency consultant.  AR 34-36.  Although the ALJ found Dr. Sherman's and the State

2   agency consultant's opinions to be "reasonable in light of the medical evidence submitted at the

3   time," he rejected their opinions that the Plaintiff was able to perform "work at the heavy exertional

4   level."  The ALJ found that the record, as a whole, better supported a conclusion that Plaintiff could

5   work at the less strenuous medium level.  AR 35.  The ALJ also gave little weight to the State's

6   agency consultant's opinion that "there was insufficient evidence to assess the claimant's

7   impairments or to adjudicate the claimant's application for benefits."  The ALJ noted that the State

8   agency consultant did not have the opportunity to review all of the Plaintiff's records, observe

9   Plaintiff, or review his hearing testimony.

10          The ALJ gave little weight to the disability statement of Plaintiff's treating physician Dr.

11   Kuraishi because her findings were "brief, conclusory, and inadequately supported by clinical

12   findings."  AR 35.  The ALJ found that Dr. Kuraishi's conclusions were based primarily on the

13   claimant's subjective symptoms, which the ALJ found to only be partially credible.  Dr. Kuraishi's

14   opinions were also not supported by "the claimant's admitted activities, the objective and clinical

15   evidence of record, or the claimant's treatment history."  AR 35.  The ALJ also gave little weight to

16   the conclusion of treating physician James Wood, DPM, who found that the Plaintiff "was unable to

17   walk or stand for prolonged periods and was essentially disabled."  AR 35.  The ALJ found that this

18   opinion "is not supported by the objective evidence of record and appears to place more weight on the

19   claimant's subjective complaints that have been found only partially credible."  AR 35.

20          Overall, the ALJ found that there was no credible medical source supported by the objective

21   medical evidence that "endorses the extent of the claimant's alleged functional limitations or suggests

22   functional limitations more restrictive that the residual functional capacity found in this decision."

23   AR 36.  He therefore concluded that the evidence as a whole supported his determination that

24   Plaintiff had the residual functional capacity to perform the full range of medium work as defined in

25   20 CFR 404.1567(c) and 416.967(c).

26          The ALJ discussed Plaintiff's RFC in the context of his prior employment.  He stated Plaintiff

27   had prior work experience as a kitchen helper which was a medium, unskilled position.  The ALJ

28   found that Plaintiff was able to perform this past relevant work as generally performed. The ALJ

1  therefore concluded that Plaintiff had not been under a disability as defined in the Social Security Act
2  at any time from October 4, 2008 through the date of his decision.

3  **DISCUSSION**

4  ### I.    Standard of Review.

5       A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's
6  findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal
7  standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan*, 924 F.2d 841,
8  846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere
9  scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept
10  as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see*
11  *also Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). The Court must look to the record as a whole
12  and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir.
13  1993). Where the factual findings of the Commissioner of Social Security are supported by
14  substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence,
15  where the evidence may be open to more than one rational interpretation, the Court is required to
16  uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) quoting *Gallant v. Heckler*,
17  753 F.2d 1450, 1453 (9th Cir. 1984). *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).
18  The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support
19  reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d
20  1453, 1457 (9th Cir. 1995).

21       It is incumbent on the ALJ to make specific findings so that the court need not speculate as to
22  the findings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) citing *Baerga v. Richardson*, 500
23  F.2d 309 (3rd Cir. 1974). In order to enable the court to properly determine whether the
24  Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as
25  comprehensive and analytical as feasible and, where appropriate, should include a statement of
26  subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654
27  F.2d at 635.

28       In reviewing the administrative decision, the District Court has the power to enter "a judgment

14

affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II.     Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

    (a)    he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

    (b)    the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996).  If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary.  20 C.F.R. § 404.1520(a).  At the first step, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b).  If so, the claimant is not considered disabled. *Id.* § 404.1520(b).  Second, the Commissioner determines whether the claimant's impairment is severe. *Id.* § 416.920(c).  If the impairment is not severe, the claimant is not considered disabled. *Id*. § 404.152(c).  Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1.  The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* §

1   404.1520(d).  If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant

2   can perform past relevant work.  *Id.* § 416.920(e).  If the claimant can engage in past relevant work,

3   then no disability exists.  *Id.* § 404.1520(e).  If the claimant cannot perform past relevant work, the

4   Commissioner has the burden to prove the fifth and final step by demonstrating that the claimant is

5   able to perform other kinds of work.  *Id.* § 404.1520(f).  If the Commissioner cannot meet his or her

6   burden, the claimant is entitled to disability benefits.  *Id.* § 404.1520(a).

7     **III.**  **Analysis of Plaintiff's Alleged Disability**

8     Plaintiff asserts that the ALJ erred prior to or at step four of the sequential analysis by failing

9   to articulate legitimate reasons for rejecting the opinion of the treating physicians and by failing to

10   provide clear and convincing reasons for finding Plaintiff not credible when determining his residual

11   functional capacity.  Reviewing the record as a whole, weighing both the evidence that supports and

12   the evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision is supported

13   by substantial evidence and that the ALJ did not commit legal error.  Because the ALJ's rejection of

14   the treating physicians' opinions is based largely on his finding that the Plaintiff was only partially

15   credible, the analysis will begin with the credibility determination.

16     **A.**  **Whether the ALJ erred in finding that Plaintiff's testimony was only partially**
        **credible.**

17

18     The Ninth Circuit has consistently held that "questions of credibility and resolution of

19   conflicts in the testimony are functions solely of the Secretary."  *Sample v. Schweiker*, 694 F.2d 639,

20   642 (9th Cir. 1982); *see also Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985).  "The ALJ is

21   responsible for determining credibility and resolving conflicts in medical testimony."  *Magallenes,*

22   881 F.2d at 750.  However, the ALJ's credibility findings must be supported by specific, cogent

23   reasons.  *See Rahad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *see also Yuckert v. Bowen*, 841

24   F.2d 303, 307 (9th Cir. 1988).  General findings are insufficient; rather, the ALJ must identify what

25   testimony is not credible and what evidence undermines the claimant's complaints.  *Lester v. Chater,*

26   81 F.3d 821, 834 (9th Cir. 1995); *see also Dodrill v. Shalala*, 12 F.2d 915, 918 (9th Cir. 1993).

27   Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's

28   reasons for rejecting the claimant's testimony must be clear and convincing.  *See Lester,* 81 F.3d at

834.  In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *See Smolen*, 80 F.3d at 1284 (citations omitted).

The ALJ found Plaintiff's claims to be only partially credible due to Plaintiff's "inconsistent statements, admitted activities, and non-compliance with treatment."  AR 33.  The ALJ described the Plaintiff's inconsistencies as follows:

> The claimant alleged that despite having undergone two surgeries on his foot and having undergone physical therapy his conditions continued to bother him and he continued to suffer from constant pain. The claimant testified that his left foot continued to bother him while his right foot was currently not an issue.  He initially said that after 45 minutes of standing or walking he began having significant pain in his feet.  However, at the hearing the claimant said that he was unable to take a full step, was unable to stand for more than 20 minutes because his feet would go numb and hurt, and was unable to walk more than three steps.
>
> . . .
>
> Despite the alleged severity of his impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant testified he was able to drive, take care of his house doing what cleaning needs to be done such as washing dishes, sweeping, and cleaning up after his wife.

AR 32 (internal citations to record omitted).

A credibility finding based on inconsistency between the severity of claimant's subjective symptoms and his daily activities should be carefully scrutinized.  The Ninth Circuit has made clear that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  *Walton v. Colvin*, 2015 WL 3649678 at *5 (D. Nev. 2015) quoting *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).  The claimant's credibility should only be discounted on this ground if the level of activity is inconsistent with the claimed limitations.  *Id*.  Plaintiff's testimony regarding his daily activities did not clearly contradict his testimony regarding his difficulty in walking or standing for prolonged periods because of pain in his feet.  Plaintiff specifically testified that "I could do a few light things like washing dishes or sweeping, you know, take, making sure that I'm okay while doing it."  AR 46.

17

1    There is other substantial evidence, however, to support the ALJ's finding that the Plaintiff's

2    testimony regarding the severity of his symptoms was not fully credible.  Plaintiff's testimony at the

3    administrative hearing was inconsistent with the medical evidence both before and after his most

4    recent surgery and diminishes his credibility.  Plaintiff had normal range of motion on February 8,

5    2010 and on October 7, 2010.  AR 235, 255.  Plaintiff reported in December 2011 that he was limited

6    to about 30-45 minutes of walking or standing.  AR 315.  Following the surgery in October 2012,

7    however, Plaintiff reported a significant decrease in his pain level which was well controlled without

8    medication.  AR 378-382.   On February 8, 2013, Dr. Wood noted that Plaintiff reported that his pain

9    was 4/10 as compared to 10/10 preoperatively.  Dr. Wood noted a "Huge improvement."  AR 386.

10   Dr. Wood also noted only minor pain on physical examination.  *Id.*  Plaintiff testified at the hearing

11   on February 12, 2013, however, that before the operation he could walk for about 45 minutes, but "I

12   cannot even do that right now because after taking approximately three steps I feel pain, I feel like

13   some type of pain in my nerve."  AR 48.  He testified that he could not stand for more than 15-20

14   minutes because of the pain.  *Id.*  Plaintiff's testimony in this regard was inconsistent with his pain

15   description to Dr. Wood only four days earlier, as well as Dr. Wood's report that he had only minor

16   pain on physical examination.

17   The ALJ also discussed the findings of Dr. Sherman who assessed Plaintiff with an essentially

18   normal physical examination except for "some tenders, decreased sensation on the sole of the left

19   foot, and some local tenderness with palpation over the planter aspect of the calcaneus."  AR 34.  Dr.

20   Sherman also noted no mechanical deficit in either foot.  *Id.*  The ALJ rejected Dr. Sherman's opinion

21   that Plaintiff was functionally able to perform heavy work.  He did not, however, reject Dr.

22   Sherman's findings regarding Plaintiff's relatively modest limitations due to pain.

23   The ALJ found that the Plaintiff's reported symptoms were inconsistent with the conservative

24   treatment he received for his condition.  Although Plaintiff underwent foot surgeries in July and

25   August 2008, and again in October 2012, his treatment during the intervening four years was

26   generally sporadic and conservative in nature.  Evidence of conservative treatment is a valid ground

27   on which to discount a claimant's testimony regarding the severity of his impairment.  *Tommasetti v.*

28   *Astrue*, 583 F.3d 1035, 1039 (9th Cir. 2009) citing *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir.

2007).  Despite Plaintiff's claim of a debilitating condition, the ALJ found that Plaintiff's treatment for the four years between surgeries was conservative: physical therapy, icing, exercising, stretching, and orthotics.  AR 33.  The ALJ also discounted the credibility of Plaintiff's testimony on the ground that he had not been compliant in his treatment regimen. AR 33.  Plaintiff wore his orthotics incorrectly despite being instructed in proper usage and did not taken the prescribed dosage of medication.  Non-compliance with treatment recommendations is also a legitimate reason to discount a claimant's credibility.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  The ALJ properly discounted Plaintiff's credibility due to his repeated failures to comply with his prescribed treatment.  The ALJ therefore provided clear and convincing reasons for partially rejecting Plaintiff's testimony regarding the severity of his symptoms.

**B.   Whether the ALJ Provided Specific and Legitimate Reasons for Rejecting the Opinions of Plaintiff's Treating Physicians**

If the opinion of the claimant's treating physician is well supported by the medical evidence and is not inconsistent with the other substantial evidence of record, it will be given controlling weight.  20 C.F.R. § 404.1527(c)(2).  The ALJ is required to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinions of a treating physician(s).  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  The ALJ can satisfy this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  If the ALJ determines that the treating physician's opinion will not be given controlling weight, he "must apply the factors set forth in 20 C.F.R. § 404.1527(c)(2)(I-ii) and (c)(3-6) in determining how much weight to give each opinion.  These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors that tend to support or contradict the opinion.  *See Garrison*, 759 F.3d at 1012, n.11.  A treating physician's opinion is "still owed deference and will often be 'entitled to the greatest weight'... even if it does not meet the test

1   for controlling weight." *Garrison*, 759 F.3d at 1012 quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th
2   Cir. 2007).

3       In concluding that Plaintiff was not disabled, the ALJ gave "little weight" to the opinions of
4   Dr. Kuraishi and Dr. Wood regarding Plaintiff's alleged disability.  AR 35.  He noted that Dr.
5   Kuraishi and Dr. Wood relied on Plaintiff's subjective complaints, which the ALJ found to not be
6   completely credible.  *Id*.  In regard to Dr. Kuraishi, the ALJ stated:

7           Dr. Kuraishi did not cite to any objective medical evidence to support
            his opinion (SSR 96-7p).  Further, the allegations of a disabling
8           condition based on the claimant's symptom of pain are not supported
            by the claimant's admitted activities, the objective and clinical evidence
9           of record, or the claimant's medical history.

10      AR 35.

11      The ALJ also stated that Dr. Wood's opinion that Plaintiff was disabled was "not supported
12  by the objective evidence of record and appears to place more weight on the claimant's subjective
13  complaints that have been found only partially credible."  AR 35.  The ALJ stated that Dr. Wood's
14  opinion was inconsistent with the medical evidence as a whole, and with the reported evidence of the
15  Plaintiff's "admitted activities of daily living."  *Id*.  The ALJ also stated that Dr. Wood's disability
16  opinion is "an opinion on an issue reserved to the Commissioner."  *Id*.

17      An ALJ may properly consider the extent to which a treating physician's opinion is based on
18  the claimant's subjective complaints in determining the weight to give to that opinion.  *See Batson v.*
19  *Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004).   As detailed above, the ALJ found that
20  Plaintiff's statements regarding the severity of his symptoms were not entirely credible.  The medical
21  evidence also indicated that Plaintiff's reported symptoms do not match his actual condition.  Despite
22  Plaintiff's statement in December, 2011, that he could not walk or stand for more than 45 minutes,
23  Dr. Sherman found on October 25, 2011 that he had no mechanical or neurologic defects.  AR 301.
24  He was able to walk and squat normally, without the use of an assistive device.  AR 300.  Plaintiff
25  also repeatedly demonstrated a full range of motion in his feet and ankles.  AR 235, 255, 301.  Dr.
26  Wood also found that Plaintiff demonstrated "huge improvement" after his October 2012 surgery.
27  AR 386.  He noted that Plaintiff's pain level had decreased from 10/10 to 4/10 after the surgery, his
28  pain was well controlled by pain medication, and was consistent with the breaking down of scar

20

1  tissue post-operation. The ALJ was therefore justified in concluding that Dr. Wood's opinion on

2  disability was not supported by the objective medical record, including his own treatment records.

3        The ALJ also discounted the opinions of the treating physicians because they rendered

4  opinions "on an issue reserved to the Commissioner."  AR 35.  However, "[i]n disability benefits

5  cases...physicians may render medical, clinical opinions, or they may render opinions of the ultimate

6  issue of disability - the claimant's ability to perform work."  *Hawkins v. Colvin*, 2014 WL 5529361 at

7  *15 (D. Nev. 2014) quoting *Garrison*, 759 F.3d at 1012.  Dr. Kuraishi stated that the Plaintiff had

8  serious limitations that prevented him from working.  AR 369-372.  Dr. Wood described Plaintiff's

9  condition as "unable to walk or stand for prolonged periods of time" and noted that the condition

10  "may be permanent."  AR 373.  These are not opinions solely reserved for the Commissioner, and are

11  entitled to weight if they are "not inconsistent with the other substantial evidence of record."  The

12  ALJ was not justified in rejecting the treating physicians' disability opinions solely on the ground that

13  the issue of disability is reserved for the commissioner.  The ALJ, however, properly discounted the

14  treating physicians' opinions because they were based on Plaintiff's questionable subjective

15  complaints and were not consistent with the other substantial evidence in record.

16  **CONCLUSION**

17        The ALJ properly discounted the credibility of Plaintiff's statements and testimony regarding

18  the severity of his pain and other symptoms.  The ALJ also properly rejected the disability opinions of

19  Plaintiff's treating physicians on the grounds that they relied on the subjective complaints of the

20  Plaintiff, were not supported by an objective evaluation of the medical evidence and were not

21  consistent with that evidence.  Accordingly,

22  **RECOMMENDATION**

23        **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and Remand (#22)

24  be **denied**, and that the Defendant's Cross Motion to Affirm (#23) be **granted**.

25  **NOTICE**

26        Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

27  writing and filed with the Clerk of the Court within fourteen (14) days.  Appeals may been waived

28  due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142

1   (1985).  Failure to file objections within the specified time or failure to properly address and brief the

2   objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues

3   from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v.*

4   *Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

5          **DATED** this 26th day of October, 2015.

6

7                                                GEORGE FOLEY, JR.

8                                                United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28